ARKANSAS FIRST NATIONAL BANK, EXECUTOR OF
THE ESTATE OF WAYNE R. CHITWOOD, DECEASED, *v.*
R. H. SCUDDER AND SCUDDER CHEVROLET,
INC.

5-6066                                      486 S.W. 2d 83

Opinion delivered November 6, 1972

*Rasmussen & Hogue,* for appellant.

*Wood, Smith & Schnipper,* for appellee.

CARLETON HARRIS, Chief Justice. R. H. Scudder, President of Scudder Chevrolet, Inc., appellees herein, Wayne R. Chitwood, and Warren Chitwood, were the owners of all the stock of Scudder Chevrolet, Inc., formerly Chitwood Motor Company. Wayne and Warren were brothers and Scudder was a half brother. For a number of years Wayne was the president and the largest stockholder of Chitwood Motor Company, and on April 28, 1950, Metropolitan Life Insurance Company issued its policy on the life of Wayne Chitwood in the amount of $25,000 (term insurance), Chitwood Motor Company being the beneficiary. Because of the physical condition of Wayne and management problems, the parent motor

company insisted that changes be made under the threat of revoking the dealership. Wayne was required to reduce his stock by sales to his brother Warren and to Scudder and his holdings were reduced to 26.1% of the stock. Later, there was a requirement that the name of the dealership be changed to Scudder Chevrolet, Inc.,[1] and still later it was required that the dealership be sold. On January 19, 1968, Wayne, Warren, and Scudder entered into an agreement whereby Wayne and Warren sold all of their stock to Scudder Chevrolet, Inc. On the same day, substantially all of the assets of Scudder Chevrolet were sold to Joe Edd Hawkins Chevrolet, Inc. The premiums on the aforesaid policy had been paid by Chitwood Motor Company, and later by Scudder Chevrolet, Inc. Warren Chitwood died later in 1968 and Wayne died on March 15, 1969. The proceeds of the policy, here in question, in the amount of $28,514.74 were paid to Scudder Chevrolet, Inc. On February 13, 1970, suit was instituted on behalf of the estate of Wayne R. Chitwood for 26.1% of the $28,514.74 proceeds from the insurance policy and 26.1% of certain accounts receivable. After the filing of an answer, the case proceeded to trial and thereafter the trial court denied recovery for any of the proceeds of the insurance policy but entered judgment for appellant for 26.1% of certain accounts receivable. From the judgment so entered, appellant brings this appeal. For reversal six points are asserted but all are closely related and intertwined and there is no necessity for our discussion to be point by point.

The agreement entered into on January 19, 1968, between the three reflects that Warren Chitwood assigned and transferred his 369 shares of capital stock for the sum of $69,083.64, Warren acknowledging receipt of that sum, and Wayne Chitwood acknowledged receipt of $49,890.92 for an assignment and transfer of 261 shares of capital stock. The agreement further recited:

"The buyer further agrees that a complete and care-

---

[1] The name of the beneficiary was changed to Scudder Chevrolet, Inc. on April 29, 1960.

ful account will be maintained of collections received on customer accounts and notes receivable which were balances as of December 31, 1967 of the buyer not purchased by Joe Edd Hawkins Chevrolet Company totaling $6,419.71. From collections there will be deducted all collections expense, and expense of maintaining the collection records and any other expense of the Chevrolet Agency paid by the buyer which was not specifically taken into account in determining the fair market value of the stockholders equity of Scudder Chevrolet, Inc. of $206,844.34 on December 31, 1967, which was the basis for the agreed considerations paid for the stock as set out in this agreement. After collection efforts have been exhausted net income from collections if any will be determined and of the amount so determined buyer agrees to pay to Warren Chitwood 36.9% thereof and Wayne Chitwood 26.1% thereof as additional consideration for the Scudder Chevrolet, Inc. stock purchased from the sellers."

This portion of the agreement was the basis of the court's judgment finding that the estate of Wayne Chitwood was entitled to 26.1% of collections made on the unpaid accounts receivable.[2] At the time of the agreement, because of unpaid dividends which had been allowed to accumulate and interest, the policy had a value of $2,896.-48. John T. Rogers, Jr., a Certified Public Accountant,[3] who with Charley Dodson, had examined the books and records and established the net worth figure, and who had prepared the agreement, testified that his net worth figure did not include the accrued dividends and interest as an asset. Rogers said that he did not know of the

---

[2] From the opinion of the court: "Regarding the collections by Scudder Chevrolet, Inc. on the unpaid accounts receivable retained by the company, plaintiff is entitled to recover 26.1% of the sum of $2928.00 from defendant corporation. The judgment should reflect that Scudder Chevrolet Inc. had collected the sum of $3841.34 of the accounts receivable referred to in the aforesaid agreement and was entitled to credit for expenses in the sum of $878.34 leaving the aforesaid sum of $2928.00 as the net collected on those accounts."

[3] Mr. Rogers is also a licensed attorney.

existence of the policy until after the agreement had been executed and performed; that he had discussed the adjusted statement and balance sheet with Wayne and that the policy was not mentioned by either Wayne or Scudder. However, he indicated that, were it otherwise, it would not have been listed, stating:

> "This is a dividend or a premium adjustment which is not cash value, as I understand it. Now in accounting for life insurance, or value of life insurance, if this had had a cash value Charles Dodson would have, I'm sure reflected this on the books of the company and credited it retained earnings. **** Now this was not put on the books as an asset because it was not cash value, as I understand it."

The witness said that it would not be considered good accounting to list it as an asset, and it was not taken into consideration in computing the net worth of the company. Mrs. Delphia Hoopes, Wayne's daughter, testified that she was present when her father and uncle (Scudder) returned from the bank, and her father brought up the subject of the insurance. She said that Scudder said "If and when I cash these in you'll get your share". Scudder testified that at the time of the agreement, the matter of the policy did not cross his mind, and after the transaction was completed, Wayne asked "What are we going to do about the interest and premium on that policy?" and he replied "Wayne, if and when I decide, if I decide to cash it in, I'll get you yours." He said that no agreement was entered into then, or later, with reference to the policy.

Appellant makes reference to the paragraph of the agreement, earlier quoted, points out that one premium was paid on the policy by Scudder from the funds that had been collected, a portion of which belonged to Wayne, and asserts that Scudder is accordingly estopped from denying the interest of Wayne's estate in the policy. We do not agree. As stated by the circuit court, "Referring back to the insurance policy, the funds of

Scudder Chevrolet, Inc. were so commingled that you could not distinguish any part of said funds from any other". The testimony reflected that Scudder's personal funds and the corporation collections were in the same account, and the check for the premium was written on this account[4] Appellant cites several cases which it asserts apply to its theory of estoppel, but we do not agree. There was no fraud in this case, nor is there any contention that fraud was practiced. Admittedly, both Scudder and Wayne were aware of the policy; in other words, there was no concealment and no representations were made by Scudder upon which Wayne Chitwood relied to his detriment. As the court found, Scudder's knowledge about company business affairs, at the time the agreement was entered into, was no greater than the knowledge of his two half brothers who sold their stock interest to the company.

It is asserted that the court erred in failing to find that the minds of the parties had not met. It is argued that there was no transaction with regard to the earned premium and interest figure, and that therefore the original parties retained all of their interest in the policy. However, to a degree, appellant meets itself coming and going, for under the same point, the case of *Arnett & Arnett* v. *Lillard,* 245 Ark. 939, 436 S. W. 2d 106, is cited and argued in support of appellant's position. There, however, the court found, and the parties admitted, that in addition to the written instrument, there had been an oral agreement which was not expressed in the contract document. This court, under the facts there, stated that the fault should be borne equally. In the case presently before us, *admittedly there was no oral agreement.* No contract was ever entered into between the parties relative to what would be done about the policy. To the contrary, Scudder had simply said that *if*

---

[4]The evidence reflected that the bank account varied between $9,884.71 and $11,315.91. The court found that only $3,841.34 of the accounts receivable were collected, appellant being entitled to 26.1% of this amount. It is thus obvious that the account, upon which the premium check was written, contained from over twice, to nearly three times as much money at all times as had been collected.

he decided to "cash it in, I'll get you yours".

Wayne and Warren Chitwood transferred all of their shares of stock and by doing so, terminated completely their interest in the corporation. There is no evidence but that Scudder Chevrolet was a *bona fide* purchaser which, for a valuable consideration, purchased the stock. Wayne Chitwood, in making the sale, simply divested himself of any interest in the corporation, with the one exception, agreed upon between the parties, *viz,* the accounts receivable.

One of the most pertinent facts in this litigation is that Wayne Chitwood, though, under the undisputed testimony, aware of the fact that Scudder had not entered into any agreement with him relative to the policy, and though Scudder had stated (as testified to by Wayne's daughter) "If and when I cash these in, you'll get your share",—did not pursue the matter further. Let it be remembered that Wayne did not die until approximately fourteen months after entering into the agreement, and disposing of his stock in Scudder Chevrolet Co.

This case was tried by the circuit court and we are therefore only concerned with whether there was substantial evidence to support the court's judgment. From what has been said, it is apparent that we do find substantial evidence to support the findings of the Garland County Circuit Court.

Affirmed.